IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 29, 2006

## STATE OF TENNESSEE v. RUSSELL HOUSE

**Direct Appeal from the Criminal Court for Sumner County**
**No. CR-599-2004       C.L. Rogers, Judge**

_____

**No. M2006-00022-CCA-R3-CD - Filed December 21, 2006**

_____

The defendant, Russell House, was convicted by a Sumner County Criminal Court jury of aggravated perjury, a Class D felony, for lying about his criminal history during his testimony at his probation revocation hearing.  The trial court subsequently sentenced him as a Range I, standard offender to two years, with six months to be served in the county jail and the balance of the time on supervised probation.  In a timely appeal to this court, the defendant argues that the trial court erred in overruling his motion in limine to exclude the testimony of the probation revocation hearing judge and that the evidence was insufficient to sustain his conviction.  Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and D. KELLY THOMAS, JR., JJ., joined.

David R. Howard, Gallatin, Tennessee, for the appellant, Russell House.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Lawrence R. Whitley, District Attorney General; and Bryna L. Grant, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The testimony that gave rise to the defendant's indictment for aggravated perjury occurred as he was being examined by his then-defense counsel during his April 12, 2004, probation revocation hearing and consisted of the following:

Q.      You got arrested back in February of last year.  Is that correct?

A.      Yes, sir.

Q       You were charged with domestic assault?

A       Yes, sir.

. . . .

Q       And you came into this court in July of last year and entered some pleas that placed you on probation.  Is that correct?

A       Yes, sir.

Q       Had you ever been in trouble before?

A       No, sir.

Q       Before you were arrested back in February?

A       Never been in trouble.

The defendant's probation officer, Martha Jo Fenimore, testified at the defendant's September 13, 2005, aggravated perjury trial that she was assigned to supervise the defendant on July 17, 2003, the day that he pled guilty to domestic assault in criminal court.  She said the defendant, who received two consecutive eleven-month-twenty-nine-day sentences, reported as scheduled for his initial meeting, in which she went over the conditions of his probation with him.  Among those conditions were that the defendant attend domestic violence classes, have "a LSI," or alcohol and drug assessment, and enroll in GED classes.  She stated that she filed a probation violation warrant against the defendant in January 2004 because of his failure to comply "with any of the orders of the Court."

Fenimore testified that she was present at the April 12, 2004, probation revocation hearing when the defendant testified that he had never been in trouble prior to his February 2003 arrest for domestic assault.  She said she believed the defendant's testimony was untruthful because she knew the charges he had been facing at the time he was placed on probation.  She explained: "My first thought was when he was put on probation the charges were aggravated assault and domestic assault, and with the knowledge that I have . . . I knew that there had to be another domestic previous with the same victim."  Consequently, after the hearing she pulled the defendant's records in general sessions court and discovered that he had been arrested for domestic assault on March 18, 2002, and placed under the supervision of Probation Officer Gary Tesser.  Fenimore further testified that a probation violation warrant had been filed against the defendant in connection with that case on May 15, 2002.  However, the records that were introduced as an exhibit to her testimony reflect that the defendant was convicted of assault on May 15, 2002, and that the probation violation warrant,

alleging that he had failed to report to his probation officer, failed to notify his probation officer of his address, and failed to pay court costs, was filed on August 29, 2002. Fenimore testified that she had recommended that the defendant's probation be revoked and his consecutive eleven-month-twenty-nine-day sentences reinstated. Instead, the probation revocation judge ordered that the defendant serve ninety days in jail and be returned to supervised probation.

On cross-examination, Fenimore testified that she had suspicions about the defendant's prior criminal history during the time she supervised him, but no proof until she pulled his records in general sessions court. She agreed that the allegations she made in her probation violation warrant, that the defendant had failed to pay fines and costs, had failed to enroll in domestic violence classes, and had failed to pay supervision fees, constituted "technical violations" and that the defendant had not been arrested for any new charges during the time she supervised his probation. She also acknowledged that the probation violation warrant she filed was her first with the defendant and that he had therefore "never been in trouble" with her before.

Sumner County Probation Officer Gary Tesser testified that on May 15, 2002, he was assigned to supervise the defendant on an eleven-month-twenty-nine-day sentence out of general sessions court. He said he filed a probation violation warrant against the defendant three months later, on August 29, 2002, which eventually resulted in the defendant's being found in violation of his probation and ordered to serve forty-eight hours in jail before being returned to probation. Tesser stated that he later prepared a second probation violation warrant based on the defendant's January 31, 2003, arrest for aggravated assault and his February 24, 2003, arrest for driving on a revoked license. However, the general sessions judge told him to close the defendant's case due to the defendant's transfer to criminal court.

Judge Jane Wheatcraft, who presided over the defendant's probation violation hearing, testified that the defendant's testimony that he had never been in trouble "would have had a bearing" on her decision in his case. On cross-examination, she testified that the factors she considered in a probation revocation case included:

> Whether this is the first, second or third probation violation; what the criminal history of this defendant is; the nature of the charges; the nature of the infractions themselves; whether I think that person is -- you know, might represent a threat to the community, all that sort of thing.

She acknowledged that, according to the transcript of the probation revocation hearing, the State had not cross-examined the defendant about his prior criminal record. On redirect examination, she testified that the defendant's testimony that he had never been in trouble before would have led her to conclude that he was a first time offender and may have had an effect on the outcome of the proceedings.

The fifty-seven-year-old defendant testified that he thought defense counsel was asking whether he had been in any other trouble during the time that he had been supervised on probation by Ms. Fenimore. He explained his probation revocation hearing testimony as follows:

> They asked me had I been in trouble before, and the way they asked me, to my knowledge, I was already in trouble. I was already in, you know, domestic violence, so my understanding is they already know that because I was already on probation. I had never been in nothing else. I never got a ticket, never been in no other kind of trouble before at all.

The defendant stated that he had answered the question to the best of his knowledge as he understood it and had not, to his knowledge, lied to the probation revocation judge. On cross-examination, the defendant denied that he had been arrested for driving on a revoked license in February 2003, stating that he merely received a ticket, which was dismissed after he went to general sessions court and "got everything straightened out." He said his license had been revoked for a speeding ticket he had received in his work as a tractor trailer operator. On redirect examination, he reiterated that he had not lied at the probation revocation hearing and stated that he had no reason to try to hide anything from the probation revocation judge.

## ANALYSIS

### I. Denial of Motion in Limine to Exclude Judge's Testimony

The defendant first contends that the trial court committed reversible error by denying his motion in limine to exclude the testimony of Judge Wheatcraft. He argues that the probative value, if any, of her testimony was substantially outweighed by the danger of unfair prejudice, given her position as a criminal court judge, which necessarily added prestige and influence to the State's case. In support for his assertion that Judge Wheatcraft's position as a judge unfairly prejudiced his case, he cites Canon 2 of the Code of Judicial Conduct, which states that "[a] judge shall not testify voluntarily as a character witness." See Tenn. Sup. Ct. R. 10, Canon 2B.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. See State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996). Tennessee Rule of Evidence 401, which governs the initial issue of admissibility, requires the trial court to first determine whether the proffered evidence is relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Tennessee Rule of Evidence 403 provides that, even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

In denying the motion in limine, the trial court concluded that Judge Wheatcraft's testimony was relevant for the State to prove the materiality of the defendant's statement. The trial court

cautioned the State, however, not to ask the judge for any legal conclusions. The trial court's ruling states, in pertinent part:

> The witness' testimony is important, but remember this is a witness, so just because she's a judge or lawyer, I will not allow her to be answering any legal questions. She certainly can be asked what effect, if any, testimony this way or testimony that way, but I don't want her saying it's material. That's up to the jury to decide. So watch your questioning of her just as a witness. There's no other person that it would have mattered to. It either mattered to her or didn't matter to her or wouldn't have, and I'll let you-all figure out how to try that.

We find no abuse of discretion in the trial court's ruling. As both the trial court and the State pointed out, the defendant created the situation of which he now complains by giving his false statement in criminal court before the probation revocation judge. The trial court properly instructed the State to avoid asking any questions of the judge that would require a legal conclusion and additionally instructed respective counsel to address her in front of the jury as "Mrs. Wheatcraft," instead of "Judge Wheatcraft." We conclude, therefore, that the defendant is not entitled to relief on the basis of this claim.

## II. Sufficiency of the Evidence

The defendant also contends that the evidence was insufficient to sustain his conviction. Specifically, he argues that the State failed to prove beyond a reasonable doubt that he had the necessary intent to deceive with his testimony. When a challenge is raised as to the sufficiency of the convicting evidence, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice

-5-

> to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of a violation of Tennessee Code Annotated section 39-16-703, which, for the purposes of this case, required that the State prove that the defendant, with the intent to deceive, made a false statement under oath during or in connection with an official proceeding and that the false statement was material. See Tenn. Code Ann. § 39-16-703(a) (2003), -702(a)(1) (2003 & Supp. 2005).

When viewed in the light most favorable to the State, the evidence was sufficient to sustain the defendant's conviction for aggravated perjury. Defense counsel first elicited testimony from the defendant that he had been arrested in February of the previous year for domestic assault, had pled guilty in July, and had been placed on probation. Defense counsel then immediately asked if the defendant had ever been in trouble before, and the defendant answered that he had not. When defense counsel followed up by asking if the defendant had ever been in trouble before his February arrest, the defendant stated that he had "[n]ever been in trouble." The context in which this statement occurred, combined with the defendant's prior history of having been convicted of domestic assault in general sessions court, sentenced to probation, and found in violation of his probation, was sufficient evidence from which the jury could have reasonably concluded that the defendant made the statement with the intent to deceive.

The defendant cites State v. Forbes, 918 S.W.2d 431, 444 (Tenn. Crim. App. 1995), to argue that he should not have been found guilty for his "literally true" statements made in response to defense counsel's "over-broad and non-specific" questions. However, unlike the defendant in Forbes, whose "half-truth" was found insufficient to sustain his conviction for aggravated perjury, the defendant here told a complete, "literally untrue" statement when he testified that he had never been in trouble before. The jury obviously did not believe his claim that he made the statement believing that defense counsel had been asking him about the period he had spent on supervised probation with Ms. Fenimore. This was its prerogative as the trier of fact. We, therefore, affirm the defendant's conviction for aggravated perjury.

**CONCLUSION**

Based on our review, we conclude that the trial court did not abuse its discretion in admitting the testimony of the criminal court judge who presided over the defendant's probation revocation

hearing.  We further conclude that the evidence is sufficient to sustain the defendant's conviction for aggravated perjury.  Accordingly, we affirm the judgment of the trial court.

_____

ALAN E. GLENN, JUDGE